E. J. PYLE, *Appellee,* v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellant.*

No. 16,857.

### SYLLABUS BY THE COURT.

1. CONTRACTS—*Lease—Sublease—Duration.* A clause in a lease authorizing the tenant to sublet, and to make such a lease as the subtenant may require, does not authorize him to execute a contract extending beyond the life of the original lease.

2. ———— *Cancellation of Lease—Ratification—Estoppel.* Where by mutual agreement of the parties a lease is canceled before its expiration, and the lessor accepts from the lessee an assignment of a sublease purporting to extend beyond the life of the original lease, he does not thereby ratify the unauthorized portion thereof; nor is he precluded from demanding possession of the premises at the end of the original lease by the fact that in giving notice to the occupant of its termination he specifies a date slightly later than the actual time.

3. ———— *Tenant from Year to Year—Termination of Tenancy —Notice—Failure to Dispossess—Estoppel.* Under the statute (Gen. Stat. 1909, § 4691) providing that when a tenant for one or more years, with the assent of the landlord, continues to occupy the premises after the expiration of the term, he shall be deemed a tenant from year to year, such assent of the landlord is not shown by the fact that in a notice of the termination of the lease he names a date slightly later than the actual time, nor by the further fact that for several months he takes no steps to dispossess the tenant.

4. FORCIBLE ENTRY AND DETAINER—*Notice—Laches.* A delay of two months and a half in the commencement of an action of forcible entry and detainer, after the giving of the statutory notice thereof, is not necessarily fatal to the proceeding.

Appeal from Finney district court. Opinion filed June 10, 1911. Affirmed.

*L. A. Madison,* for the appellant.

*O. H. Foster, Edgar Foster,* and *H. O. Trinkle,* for the appellee.

The opinion of the court was delivered by

MASON, J.: On September 15, 1904, E. J. Pyle, as the agent of the owner of a building, executed to E. P. Griggs a lease for the lower floor thereof for one year, the lessee having the privilege of renewal for a like period. The lease contained this provision:

"It is further stipulated and agreed that the said E. P. Griggs shall have the right to sublet a portion of such lower floor to the Western Union Telegraph Company during the terms of this lease, and to make such leases with said Western Union Telegraph Company as may be required upon the part of said Western Union Telegraph Company."

On October 16, 1904, Griggs executed a sublease to the Western Union Telegraph Company for one year, which purported to give that company the privilege of renewal from year to year for four additional years, by giving annually a thirty-day notice.

Prior to April 2, 1906, Pyle became the owner of the building, and on that day he and Griggs, by mutual agreement, canceled their lease, and Griggs assigned to him the telegraph company's sublease.

On June 4, 1906, Pyle served a written notice upon the telegraph company, stating that its lease was terminated, to take effect on September 30, 1906.

The telegraph company remained in possession. On May 2, 1907, Pyle served it with a notice to quit, and on July 18, 1907, he began an action to recover possession under the forcible entry and detainer statute. On appeal to the district court the case was heard upon an agreed statement of facts. On March 19, 1909, judgment was rendered for the plaintiff, and the defendant appeals.

The defendant maintains: (1) That although the

lease to Griggs gave him a right of occupancy for only two years, it authorized him to make a valid contract with the telegraph company for a longer period; (2) that if such is not the proper construction of the language of the lease, Pyle by his conduct committed himself to that interpretation; (3) that even if Pyle was not fully bound by the terms of the sublease, the telegraph company had become his tenant from year to year, and was not subject to be dispossessed in this action; and (4) that the notice to quit had spent its force before the action was begun.

In support of the first proposition the argument is made that the provision in controversy contains two grants of authority, as thus indicated: "The said E. P. Griggs shall have the right (1) to sublet a portion of such lower floor to the Western Union Telegraph Company during the terms of this lease, and (2) to make such leases with said Western Union Telegraph Company as may be required upon the part of said Western Union Telegraph Company"; that the right to sublet to the telegraph company for two years was conferred by the first clause quoted; that if no further power was intended to be granted there was no occasion for saying anything more; that the second clause is either meaningless or gives the right to contract beyond that period; that the owner, recognizing that the telegraph company might be unwilling to make a short-time lease, permitted the tenant to meet such requirements in that regard as the company should exact. We think that the more reasonable view is that the second clause was merely confirmatory of the first—the meaning being that Griggs might execute such leases as might be necessary to effect a subletting for two years to the telegraph company. While the words were not necessary for this purpose, such surplusage is not uncommon in similar instruments. If the purpose had really been to allow Griggs to sublet for a period limited only by the requirements of the telegraph company, we

must suppose that language would have been chosen more clearly indicative of that purpose.

In support of the second proposition the argument is made that if the lease to the telegraph company was valid for only two years Pyle needed no assignment of it; that after settling with Griggs he could look to the company without any assignment; that the fact that he took the assignment and paid something for it shows that he regarded the sublease as valid beyond the limits of the original lease; that in giving a notice purporting to terminate the company's lease on September 30, 1906 (a date two weeks beyond the termination of the original lease), he recognized that the sublease was valid, although he misconceived his legal rights under it. Whether or not it was necessary for Pyle to have taken an assignment of the company's lease, in order that he might collect the rent from it directly, it was a natural thing to do under the circumstances. Several matters were involved in his settlement with Griggs, and it does not distinctly appear that he paid anything additional in order to procure the assignment. The fact that Pyle gave the telegraph company notice that its lease would terminate on September 30, 1906, does not seem to us to show that he recognized any extension of the original lease, although that expired September 15, 1906. The sublease was dated October 16, and the annual renewals would seemingly run from that date, but it contained reference to occupancy for years ending with September 30. The obvious purpose of the notice was to advise the company that the owner wished the tenant to leave at the end of the current year. It would attribute too much importance to the inaccuracy in stating the date to find therein a purpose to rely upon the terms of the subcontract rather than upon those of the original lease.

In support of the third proposition the argument is made that Pyle showed assent to the company's continuing to occupy the premises after the original lease

had expired, first, by naming September 30, 1906, as the date for ending the lease, and second, by acquiescing in the company's occupancy until May 2, 1907; and that therefore the company became a tenant from year to year, by virtue of the statute (Gen. Stat. 1868, ch. 55, § 2, Gen. Stat. 1909, § 4691) providing that when a tenant for one or more years, with the assent of the landlord, continues to occupy the premises after the expiration of the term, he shall be deemed a tenant from year to year. The same rule, by the weight of authority, exists in the absence of a statute. (24 Cyc. 1031-1033; 18 A. & E. Encycl. of L. 198, 210, 211; 25 L. R. A., n. s., 857, note.) This law applies where the parties allow the relation of landlord and tenant to continue beyond the time previously fixed, without any actual new agreement. "A tenancy from year to year can not be inferred from the mere fact of holding over by the tenant; the landlord must in some manner recognize the tenancy." (24 Cyc. 1032.) Although the notice given by Pyle named a date two weeks beyond the real expiration of the lease, his obvious purpose was to terminate the tenancy, and not to extend the period agreed upon. The discrepancy in the dates can not be deemed to show an assent to an occupancy by the company beyond the term. The mere fact that Pyle took no active steps to dispossess the company prior to May, 1907, did not amount to acquiescence in its continued possession; he is not shown to have collected rent, or in any other manner to have recognized the company as a tenant, after the original lease expired.

In support of the fourth contention *Douglass v. Whitaker*, 32 Kan. 381, is cited. There a plaintiff, after giving the statutory notice that he was about to sue in forcible entry and detainer, neglected to do so for over ten months, and the delay was held to be fatal. In the syllabus it was said that the lapse of any other considerable length of time betewen the notice and the commencement of the proceeding operates as a waiver.

This language was quoted with approval in *New et al. v. Collins*, 21 Okla. 430, but there the period was likewise over ten months. In *Best v. Frazier*, 16 Okla. 523, an action was sustained which was begun twenty-seven days after the notice had been given. We think that in order for lapse of time to operate as a waiver of a notice given under the statute involved, the interval must be sufficient to show a purpose to abandon the proceeding, and that under the circumstances here shown a delay for two months and a half to follow up the notice did not have that effect. Of course, if any substantial prejudice had resulted to the defendant a different question would be presented. Obviously, however, it suffered no injury from the delay, and would have derived no benefit from a new notice.

The judgment is affirmed.